# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NAJAH A. HENRY, CHANEL J. JACKSON, ALEXIS DIAS, HOLLY BUFFINTON, and CONSTANCE VENABLE,<br><br>               Plaintiffs,<br><br>        v.<br><br>BEECH-NUT NUTRITION COMPANY,<br><br>               Defendant. | Case No.  1:21-cv-285 (TJM/CFH)<br><br>**CLASS-ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.      Plaintiffs Najah A. Henry, Chanel J. Jackson, Alexis Dias, Holly Buffinton and Constance Venable individually and on behalf of all others similarly situated, by and through their undersigned attorneys, bring this Class Action Complaint against Defendant Beech-Nut Nutrition Company for its negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the heavy metals and/or perchlorate or other ingredients that do not conform to the labels, packaging, advertising, and statements of Defendant's products sold throughout the United States, including this District.  Plaintiffs seek both injunctive and monetary relief on behalf of the proposed Class and Sub-Classes (as defined below) including: (i) requiring full disclosure of all such substances and ingredients in Defendant's marketing, advertising, and labeling; (ii) requiring testing of all ingredients and final products for such substances; and (iii) restoring monies to the members of the proposed Class.  Plaintiffs allege the following based upon personal knowledge as well as investigation by their counsel and, as to all

1

other matters, upon information and belief.  Plaintiffs believe that a reasonable opportunity for

discovery will reveal substantial evidentiary support for the allegations set forth herein.

### DEFENDANT MARKETS ITSELF AS SELLING ONLY PREMIUM BABY FOOD THAT IS SAFE FOR HUMAN CONSUMPTION

2.      Defendant manufactures, markets, advertises, labels, distributes, and sells baby

food products under the brand name Beech-Nut throughout the United States, including in this

District.

3.      Defendant states that it offers natural and organic baby foods "that are free from

artificial preservatives, colors and flavors."  Defendant touts that it "conduct[s] over 20 rigorous

tests on our purees, testing for up to 255 pesticides and heavy metals (like lead, cadmium,

arsenic and other nasty stuff).  Just like you would, we send the produce back if it's not good

enough."[1]

4.      Defendant's packaging and labels further emphasize quality and safe ingredients

and even declares that the products are "100% Natural."

5.      Defendant's packaging and labels further emphasize that its baby food products

are natural, organic, and safe for human infant consumption.

6.      Yet nowhere in the labeling, advertising, statements, warranties, and/or packaging

does Defendant disclose that the Baby Foods (as listed in paragraph 27 below) include and/or

have a high risk of containing heavy metals or other ingredients that do not conform to the labels,

packaging, advertising, and statements.

---

[1] https://www.beechnut.com/our-story/.

7.      Indeed, the Baby Foods have been shown to contain significant levels of arsenic, mercury, lead, cadmium, and/or perchlorate[2]—all known to pose health risks to humans and particularly infants.  *See* Ex. A.

8.      Despite this, Defendant warrants, promises, represents, misleads, labels, and/or advertises that the Baby Foods are free of any heavy metals, perchlorate, and/or unnatural ingredients by making assurances that the foods are natural and safe for infant consumption.

9.      Defendant asserts that its foods are "real food for babies,"[3] that its foods are tested for heavy metals, and that Defendant is "aware of no higher standards in the industry than the ones we employ,"[4] in direct contradiction to the true nature of its contents, which include, but are not limited to, heavy metals and/or perchlorate.

10.      Defendant also asserts that the Baby Foods are safe and appropriate for consumption by babies through its "Stage" representations, which identify the appropriate age range that should consume the Baby Food.  For example, "Stage 1, 4 months+," "Stage 2, 6 months+," etc.  Each of the Baby Foods contain this "Stage" designation, identifying that it is suitable and appropriate for consumption by a baby or child.

11.      It was recently revealed on information and belief that Defendant was knowingly, recklessly, and/or negligently selling the Baby Foods containing arsenic, mercury, cadmium, lead, and/or perchlorate.

---

[2] HEALTHY BABIES BRIGHT FUTURES, *What's In My Baby's Food?*, https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf (hereinafter, "Healthy Babies Bright Futures Report").
[4] https://www.beechnut.com/food-quality-safety/.
[4] https://www.beechnut.com/food-quality-safety/.

12.     Plaintiffs bring this action individually and on behalf of all consumers who purchased the Baby Foods, to cause the disclosure of the presence and/or risk of the presence of heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements in the Baby Foods; to correct the false and misleading perception Defendant has created in the minds of consumers that the Baby Foods are high quality, healthy, and safe for infant consumption; and to obtain redress for those who have purchased the Baby Foods.

## JURISDICTION AND VENUE

13.     This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the Class reside in states other than the states in which Defendant is a citizen and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d) do not apply.

14.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiffs have suffered injury as a result of Defendant's acts in this district, many of the acts and transactions giving rise to this action occurred in this District, Defendant conducts substantial business in this district, Defendant has intentionally availed itself of the laws and markets of this district, and Defendant is subject to personal jurisdiction in this district.

## PARTIES

15.     Plaintiff Najah A. Henry is a resident of the Commonwealth of Pennsylvania, and purchased Defendant's Baby Foods.  Prior to purchasing the Baby Foods, Plaintiff Henry saw Defendant's nutritional claims on the packaging, including "natural[]," the "Stage" representations, and "real food for babies," which she relied on in deciding to purchase the Baby

Foods.  During that time, based on Defendant's material omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff Henry was unaware that the Baby Foods contained any level of heavy metals, chemicals, or toxins, and would not have purchased the food if that was fully disclosed, or she would not have paid as much for the Baby Foods if that information was fully disclosed.  Plaintiff Henry was injured by paying a premium for the Baby Foods that have no or *de minimis* value—or whose value was at least less than what she paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals, and toxins.

16.     Plaintiff Chanel J. Jackson is a resident of the Commonwealth of Pennsylvania, and purchased Defendant's Baby Foods.  Prior to purchasing the Baby Foods, Plaintiff Jackson saw Defendant's nutritional claims on the packaging, including "natural[]," the "Stage" representations, and "real food for babies," which she relied on in deciding to purchase the Baby Foods.  During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff Jackson was unaware that the Baby Foods contained any level of heavy metals, chemicals or toxins, and would not have purchased the food if that was fully disclosed, or she would not have paid as much for the Baby Foods if that information was fully disclosed.  Plaintiff Jackson was injured by paying a premium for the Baby Foods that have no or *de minimis* value—or whose value was at least less than what she paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals, and toxins.

17.     Plaintiff Alexis Dias is a resident of the State of Rhode Island, and purchased Defendant's Baby Foods.  Prior to purchasing the Baby Foods, Plaintiff Dias saw Defendant's nutritional claims on the packaging, including "natural[]," the "Stage" representations, and "real

food for babies," which she relied on in deciding to purchase the Baby Foods.  During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff Dias was unaware that the Baby Foods contained any level of heavy metals, chemicals or toxins, and would not have purchased the food if that was fully disclosed, or she would not have paid as much for the Baby Foods if that information was fully disclosed.  Plaintiff Dias was injured by paying a premium for the Baby Foods that have no or *de minimis* value—or whose value was at least less than what she paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals, and toxins.

18.     Plaintiff Holly Buffinton is a resident of the State of Rhode Island, and purchased Defendant's Baby Foods.  Prior to purchasing the Baby Foods, Plaintiff Buffinton saw Defendant's nutritional claims on the packaging, including "natural[]," the "Stage" representations, and "real food for babies," which she relied on in deciding to purchase the Baby Foods.  During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff Buffinton was unaware that the Baby Foods contained any level of heavy metals, chemicals or toxins, and would not have purchased the food if that was fully disclosed, or she would not have paid as much for the Baby Foods if that information was fully disclosed.  Plaintiff Buffinton was injured by paying a premium for the Baby Foods that have no or *de minimis* value—or whose value was at least less than what she paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals, and toxins.

19.     Plaintiff Constance Venable is a resident of the State of Tennessee, and purchased Defendant's Baby Foods.  Prior to purchasing the Baby Foods, Plaintiff Venable saw

Defendant's nutritional claims on the packaging, including "natural[]," the "Stage" representations, and "real food for babies," which she relied on in deciding to purchase the Baby Foods.  During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff Venable was unaware that the Baby Foods contained any level of heavy metals, chemicals or toxins, and would not have purchased the food if that was fully disclosed, or she would not have paid as much for the Baby Foods if that information was fully disclosed.  Plaintiff Venable was injured by paying a premium for the Baby Foods that have no or *de minimis* value—or whose value was at least less than what she paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals, and toxins.

20.     As the result of Defendant's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiffs were injured when they paid the purchase price or a price premium for the Baby Foods that did not deliver what was promised.  They paid the premium price on the assumption that the labeling of the Baby Foods was accurate and that it was healthy, superior quality, natural, and safe for babies and children to ingest.  Plaintiffs would not have paid this money had they known that the Baby Foods contained any levels of the heavy metals, chemicals and/or toxins.  Plaintiffs were further injured because the Baby Foods that they purchased have no or *de minimis* value—or a value that was at least less than what they paid for the Baby Food—based on the presence of the alleged heavy metals, chemicals and toxins. Damages can be calculated through expert testimony at trial.  Further, should Plaintiffs encounter the Baby Foods in the future, they could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Baby Foods.

21.     Defendant Beech-Nut Nutrition Company ("Beech-Nut") is incorporated in New York.  Its headquarters and principal place of business is located at One Nutritious Place, Amsterdam, New York 12010.

22.     Defendant formulates, develops, manufactures, labels, distributes, markets, advertises, and sells the Baby Foods under the baby food brand names Beech-Nut throughout the United States, including in this District, during the Class Period (defined below).  The advertising, labeling, and packaging for the Baby Foods, relied upon by Plaintiffs were prepared, reviewed, and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein.  The marketing, advertising, packaging, and labeling for the Baby Foods were designed to encourage consumers to purchase the Baby Foods and reasonably misled the reasonable consumer, i.e., Plaintiffs and the Class, into purchasing the Baby Foods. Defendant owns, manufactures, and distributes the Baby Foods, and created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Baby Foods.  Defendant is responsible for sourcing ingredients, manufacturing the products, and conducting all relevant quality assurance protocols, including testing, for the ingredients and finished Baby Foods.

## FACTUAL ALLEGATIONS

### I.     THE BABY FOODS

23.     The Baby Foods include the following:

(a) Beech-Nut Rice Single Grain Baby Cereal – Stage 1;

 

(b) Beech-Nut Organics Oatmeal Whole Grain Baby Cereal – Stage 1;

 

(c) Beech-Nut Organics Prunes;

 

(d) Beech-Nut Naturals Prunes;

 

(e)  Beech-Nut Organics Pear, Kale, & Cucumber

 

(f)  Beech-Nut Organics Apple, Raspberries, & Avocado

 

(g) Beech-Nut Organics Apple, Kiwi, & Spinach

 

(h) Beech-Nut Organics Banana, Cinnamon, & Granola

 

(i)  Beech-Nut Organics Pears

 

(j)  Beech-Nut Organics Sweet Potatoes

 

(k) Beech-Nut Classics Sweet Carrots – Stage 2;

 

(l) Beech-Nut Organics *Just* Carrots – Stage 1;

 

(m)Beech-Nut Naturals *Just* Sweet Potatoes – Stage 1;

 

(n) Beech-Nut Organics *Just* Sweet Potatoes – Stage 1;

 

(o) Beech-Nut Classics Sweet Potatoes – Stage 2;

 

(p) Beech-Nut Classics Sweet Peas – Stage 2;

 

(q)  Beech-Nut Naturals *Just* Butternut Squash – Stage 1;

 

(r)  Beech-Nut Organic *Just* Pumpkin – Stage 1;

 

(s)   Beech-Nut Organic *Just* Apples – Stage 1;

 

(t)   Beech-Nut Naturals Bananas – Stage 1;

 

(u) Beech-Nut Naturals Beets, Pear & Pomegranate – Stage 2;

 

(v) Beech-Nut Naturals Sweet Corn and Green Beans;

 

(w) Beech-Nut Naturals Carrots;

 

(x) Beech-Nut Naturals Green Beans;

 

(y)  Beech-Nut Naturals Apple and Blackberries;




(z)  Beech-Nut Naturals Pear;




(aa)    Beech-Nut Naturals Apple and Kale;

 

(bb)    Beech-Nut Naturals Pineapple, Pear, and Avocado;

 

(cc)     Beech-Nut Naturals Sweet Potato;

 

(dd)     Beech-Nut Naturals Apple;

 

(ee)    Beech-Nut Naturals Apple, Pumpkin, and Cinnamon;

 

(ff) Beech-Nut Naturals Spinach, Zucchini, and Peas;

 

(gg)        Beech-Nut Naturals Mango

 

## II.    MISLEADING CLAIMS AND OMISSIONS

### A.  Natural

24.    The following images are some representative examples of Defendant's "natural" claim on the Baby Foods' packaging:






**B. "Stage" Representations**

25.     The following images are some representative examples of Defendant's "Stage"

claim on the Baby Foods' packaging:





**C. "Real Food for Babies"**

26.     The following images are some representative examples of Defendant's "Real Food for Babies" claim on the Baby Foods' packaging:

 

**D. Omissions**

27.     As discussed above, Defendant's Baby Food packaging also misleadingly omitted the presence, or risk of, heavy metals and perchlorate.  Defendant intentionally omitted disclosure of the presence or risk of these substances in order to induce and mislead reasonable consumers like Plaintiffs to purchase the Baby Food at premium prices.

III.   **THE PRESENCE OF HEAVY METALS AND/OR PERCHLORATE AT ANY LEVEL WOULD BE MATERIAL TO A REASONABLE CONSUMER DUE TO THE INHERENT AND KNOWN RISKS OF CONSUMPTION AND/OR EXPOSURE.**

A.   **Heavy Metals**

28.   At all times during the Class Period, Defendant knew or should have known that the Baby Foods contained heavy metals, had a risk of containing heavy metals, and/or were not sufficiently tested for heavy metals.  During this time, Defendant omitted any reference to the presence, or the risk of the presence, of heavy metals from the Baby Foods' packaging.

29.   Defendant knew or should have known that heavy metals were a potentially dangerous contaminant that pose health risks to babies and children.  Defendant knew or should have known that the standards for the presence of heavy metals in baby food have become increasingly stringent in recent years.

30.   Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize, the presence, or risk of, of heavy metals in the Baby Foods.

31.   Defendant knew or should have known that it owed consumers a duty of care to adequately test for heavy metals in the Baby Foods.

32.   Defendant knew that consumers purchased the Baby Foods based on the reasonable expectation that Defendant manufactured the Baby Foods to the highest standards to be safe and healthy for consumption by babies.  Defendant knew or should have known that consumers reasonably inferred that Defendant would hold the Baby Foods to the highest standards for preventing the presence, or risk, of heavy metals and for testing for heavy metals.

33.   A recent congressional report from the Subcommittee on Economic and Consumer Policy found that many of the products by the country's largest commercial baby food

manufacturers, including Beech-Nut, "contain significant levels of toxic heavy metals, including arsenic, lead, cadmium and mercury, which can endanger infant neurological development."[5]

34.     The Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[6]

35.     Arsenic, lead, mercury, and cadmium, four heavy metals found in the Baby Foods, are neurotoxins.  Exposures to these four heavy metals "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies."[7]

36.     The four heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[8] Even in trace amounts found in food, these heavy metals can alter the developing brain and erode a child's IQ.[9]

37.     Research continues to confirm that exposures to food containing arsenic, lead, mercury, and cadmium causes "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]"[10]

---

[5] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods.  FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed February 4, 2021).
[6] *See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Staff Report ("House Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, at 2, February 4, 2021, available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.
[7] Healthy Babies Bright Futures Report, at 13.
[8] Healthy Babies Bright Futures Report, at 6.
[9] *Id*. at 1.
[10] *Id*. at 1.

*Arsenic*

38.     The Baby Foods may contain arsenic which, when exposed to children early in life, causes "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."[11] "There is no evidence that the harm caused by arsenic is reversible."[12] Arsenic exposure also creates a risk of "respiratory, gastrointestinal, haematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system[.]"[13]

39.     Based on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA") have set standards for the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulating by the EPA).[14]

---

[11] *Id*. at 13.

[12] *Id*.

[13] House Report, at 10 (quoting Miguel Rodríguez-Barranco et al., *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioural Disorders in Children: A Systematic Review and Meta-Analysis* (June 1, 2013) (online at https://pubmed.ncbi.nlm.nih.gov/23570911/)).

[14] The FDA has taken action based on consumer products exceeding this limit, including testing and sending warning letters to the manufacturers.  *See*, *e.g*., Warning Letter from FDA to Valley Processing, Inc. (June 2, 2016), https://www.fda.gov/iceci/enforcementactions/warningletters /2016/ucm506526.htm.

40.     Moreover, the FDA has set the maximum allowable arsenic levels in bottled water at 10 ppb of inorganic arsenic.[15] The FDA is also considering limiting the action level for arsenic in rice cereals for infants to 100 ppb.[16]

41.     Beech-Nut set an internal specifical limit of 3,000 ppb inorganic arsenic for certain ingredients and, as a result, used ingredients "with as much as 913.4 ppb arsenic" and "routinely used ingredients that exceeded 300 ppb total arsenic[.]"[17]

***Lead***

42.     The Baby Foods also may contain lead, which is another carcinogen and developmental toxin known to cause health problems.

43.     Lead exposure can seriously harm children's brain and nervous systems and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth."[18]

44.     Exposure to lead in food builds up over time.  Buildup can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

---

[15] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods.  FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed February 4, 2021).
[16] FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level (Apr.   2016),   https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/UCM493152.pdf.
[17] House Report, at 17.
[18] House Report, at 11.

45.     Even very low exposure levels to lead "cause lower academic achievement, attention deficits and behavior problems.  No safe level of exposure has been identified."[19]

46.     One study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food.[20] Additionally, studies have established a link between lead exposure and Attention-Deficit/Hyperactivity Disorder (ADHD).[21]

47.     Although there is no federal standard for lead in baby food, health experts, including the American Academy for Pediatrics, the Environmental Defense Fund, and Consumer Reports, have agreed that lead in baby foods should not exceed 1 ppb.[22]  "The European Union has set the maximum lead level in infant formula to 20 ppb."[23]

48.     Beech-Nut set an internal specifical limit of 5,000 ppb for lead in certain ingredients, which far surpasses any existing regulatory standard in existence.[24]

49.     The Baby Foods used ingredients containing as much as 886.9 ppb lead and "ingredients with high lead content, including 483 that contained over 5 ppb lead, 89 that contained over 15 ppb lead, and 57 that contained over 20 ppb lead."[25]

---

[19] Healthy Babies Bright Futures Report, at 13; ENVIRONMENTAL DEFENSE FUND, *Lead in food: A hidden health threat*, https://www.edf.org/sites/default/files/edf_lead_food_report_final.pdf
[20] *Id*. at 7.
[21] House Report, at 12 (citing Gabriele Donzelli et al., *The Association Between Lead and Attention-Deficit/Hyperactivity Disorder: A Systematic Review* (Jan. 29, 2019) (online at www.mdpi.com/1660-4601/16/3/382/htm)).
[22] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods.  FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed February 4, 2021).
[23] *Id*.
[24] House Report, at 38.
[25] House Report, at 3.

50.     Defendant only tested its ingredients, not its finished products, for lead and sold products with significant amounts of lead.[26]

*Mercury*

51.     The Baby Foods also may contain mercury, which increases the risk for cardiovascular disease and can cause vision, intelligence, and memory problems for children exposed in utero.  Exposure to mercury has been linked to higher risk of lower IQ scores and intellectual disability.[27]  Mercury exposure at two and three years of age has been positively associated with autistic behaviors among pre-school age children.[28]

52.     The EPA has set a maximum mercury level in drinking water to 2 ppb.[29]

53.     Defendant does not test its ingredients or finished products for mercury.[30]

*Cadmium*

54.     Finally, the Baby Foods may contain cadmium which has been observed to cause anemia, liver disease, and nerve or brain damage in animals eating or drinking cadmium.

55.     Cadmium is linked to neurotoxicity, cancer, and kidney, bone, and heart damage. Scientists have reported a "tripling of risk for learning disabilities and special education among children with higher cadmium exposures, at levels common among U.S. children[.]"[31] Cadmium, like lead, "displays a troubling ability to cause harm at low levels of exposure."[32]  The U.S. Department of Health and Human Services has determined that cadmium and cadmium

---

[26] House Report, at 22.
[27] Healthy Babies Bright Futures Report, at 14.
[28] House Report, at 12-13.
[29] House Report, at 32.
[30] House Report, at 33.
[31] Healthy Babies Bright Futures Report, at 14.
[32] *Id.*

compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.[33]

56.     The EPA has set a maximum cadmium level in drinking water to 5 ppb, the FDA has set a maximum level in bottled water to 5 ppb, and the WHO set a maximum cadmium level in drinking water to 3 ppb.[34]

57.     Beech-Nut set an internal specifical limit of *3,000 ppb* for cadmium in certain ingredients, which far surpasses any existing regulatory standard in existence.[35]

58.     Despite its excessively high cadmium limit, Beech-Nut sold eleven products that surpassed its limit, including potato containing 119.6, 143.5, and 148.4 ppb cadmium.[36]

59.     Beech-Nut "routinely used high-arsenic additives and ingredients containing up to 344 ppb cadmium."[37] The Baby Foods used "105 ingredients that tested over 20 ppb cadmium."[38]

60.     Indeed, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals.[39]

---

[33] ATSDR, Public Health Statement: Cadmium (Sept. 2012), https://www.atsdr.cdc.gov/phs/phs.asp?id=46&tid=15.

[34] House Report, at 29.

[35] House Report, at 38 (emphasis added).

[36] House Report, at 38.

[37] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods.  FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed February 4, 2021).

[38] House Report, at 3.

[39] FDA, Metals, https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm.

61.     Despite the known risks of exposure to these heavy metals, Defendant has negligently, recklessly, and/or knowingly sold the Baby Foods without disclosing they may contain levels of arsenic, mercury, cadmium and lead to consumers like Plaintiffs.

62.     Additionally, Defendant knew or should have been aware that a consumer would be feeding the Baby Foods multiple times each day to his or her child, making it the primary source of food for the child.  This leads to repeated exposure of the heavy metals to the child.

63.     Defendant has wrongfully and misleadingly advertised and sold the Baby Foods without any label or warning indicating to consumers that these products contain heavy metals, or that these toxins can over time accumulate in the baby's body to the point where poisoning, injury, and/or disease can occur.

64.     Defendant's omissions are material, false, misleading, and reasonably likely to deceive the public.  This is true especially considering the long-standing campaign by Defendant to market the Baby Foods as healthy, safe, and high-quality to induce consumers, such as Plaintiffs, to purchase the products.  For instance, Defendant markets the Baby Foods as "natural," appropriate for certain "Stage[s]" (*i.e.*, 4+ months, 6+ months etc.) and "real food for babies," both on the products' packaging and on Defendant's websites.

65.     Using such descriptions and promises makes Defendant's advertising campaign deceptive based on presence, or risk of, of heavy metals in the Baby Foods.  Reasonable consumers, like Plaintiffs, would consider the mere presence or risk of heavy metals in the Baby Foods as a material fact in considering what baby food products to purchase.  Defendant's above-referenced statements, representations, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the Baby Foods are healthy, safe, high-quality and free of contaminants such as arsenic and lead.  Moreover,

Defendant knew or should have reasonably expected that the presence, or risk, of heavy metals in its Baby Foods is something an average consumer would consider in purchasing baby food. Defendant's representations and omissions are false, misleading, and reasonably likely to deceive the public.

66.     Moreover, reasonable consumers, such as Plaintiffs and other members of the Classes (as defined herein), would have no reason to believe and/or anticipate that the Baby Foods are not "natural," appropriate for consumption by a baby in the stated "Stage," or "real food for babies." Non-disclosure and/or concealment of the presence, or risk of, heavy metals in the Baby Foods coupled with the misrepresentations alleged herein by Defendant suggesting that the food is appropriate for consumption by babies is intended to and does, in fact, cause consumers to purchase a product Plaintiffs and members of the class would not have bought if the true quality was disclosed.  As a result of these false or misleading statements and omissions, Defendant has generated substantial sales of the Baby Foods.

67.     Plaintiffs brings this action individually and on behalf of all other similarly situated consumers who purchased the Baby Foods, in order to cause the disclosure of the presence, or risk, of heavy metals that pose a known risk to infants in the Baby Foods, to correct the false and misleading perception Defendant has created in the minds of consumers that the Baby Foods are high quality, safe, and healthy, and to obtain redress for those who have purchased the Baby Foods.

### B.  Perchlorate

68.     At all times during the Class Period, Defendant knew or should have known that the Baby Foods contained perchlorate, were at risk of containing perchlorate, and/or were not

sufficiently tested for perchlorate.  During this time, Defendant omitted any reference to the presence or risk of perchlorate from the Baby Foods' packaging.

69.     Defendant knew or should have known that perchlorate is a potentially dangerous contaminant that poses health risks to babies and children.

70.     Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize, the presence of perchlorate in the Baby Foods.

71.     Defendant knew or should have known that it owed consumers a duty of care to adequately test for perchlorate in the Baby Foods.

72.     Defendant knew that consumers purchased the Baby Foods based on the reasonable expectation that Defendant manufactured the Baby Foods to the highest standards to be safe and healthy for consumption by babies.  Defendant knew or should have known that consumers reasonably inferred that Defendant would hold the Baby Foods to the highest standards for preventing the presence or risk of perchlorate and for testing for perchlorate.

73.     Perchlorate disrupts thyroid functions that are crucial to brain development. Perchlorate has been "linked to IQ loss among children born to mothers with thyroid dysfunction."[40]

74.     The levels of perchlorate in children's food has increased significantly from 2005. Perchlorate—which is both a naturally occurring and manmade chemical—was approved by the FDA in 2005 for use as an antistatic in plastic food packaging.  In 2016, the FDA expanded the approval to cover dry food handling equipment.  Hypochlorite bleach, which is used to disinfect food processing equipment, can also create perchlorate as a product of degradation.

---

[40] Healthy Babies Bright Futures Report, at 8.

75.     The dangers of perchlorate in human food are recognized by the FDA.[41]

76.     Still, certain Baby Foods are sold by Defendant that may contain levels of perchlorate.

77.     Despite the risk and/or actual presence of these unnatural and potentially harmful chemicals, Defendant prominently warrants, claims, features, represents, advertises, or otherwise markets the Baby Foods as "natural," appropriate for consumption by a baby in the stated "Stage," and "real food for babies" and fails to disclose the presence, or risk of, heavy metals and perchlorate.

## IV.   DEFENDANT FALSELY ADVERTISES THE BABY FOODS AS NUTRITIOUS AND HEALTHY WHILE OMITTING ANY MENTION OF THE RISK AND/OR ACTUAL INCLUSION OF HEAVY METALS AND PERCHLORATE.

78.     Defendant formulates, develops, manufactures, labels, packages, distributes, markets, advertises, and sells its extensive Beech-Nut lines of baby food products across the United States, including the Baby Foods.

79.     Defendant positions the Baby Food as "natural and organic products that are free from artificial preservatives, colors and flavors" to place them within the premium category of baby food.

80.     Defendant has represented a commitment to using real and simple ingredients. Indeed, the packaging emphasizes to consumers that the Baby Foods are natural or organic and represent that there is "[n]othing artificial added."

---

[41] FDA, Exploratory Survey Data on Perchlorate in Food 2004-2005, https://www.fda.gov/food/chemicals/exploratory-survey-data-perchlorate-food-2004-2005 ("Human exposure to sufficient doses of perchlorate can interfere with iodide uptake into the thyroid gland, disrupting its functions and potentially leading to a reduction in the production of thyroid hormones.").

81.     Defendant had a duty to ensure the Baby Food lived up to these representations and marketing positioning the Baby Food as high-quality and premium.  As such, Defendant knew or should have known that the Baby Foods had a high risk and/or actually included heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements, including only natural, organic, or "real food" ingredients.

82.     Defendant specifically promises on its website that it tests its foods "for up to 255 pesticides and heavy metals (like lead, cadmium, arsenic and other nasty stuff)." As such, Defendant knew or should have known that the Baby Foods contained, or had a risk of containing, heavy metals, perchlorate, and/or unnatural or other ingredients.

83.     Based on these false representations, Defendant charges a premium, knowing that the claimed natural make-up of the Baby Foods (as well as all of the other alleged false and/or misleading representations discussed herein) is something an average consumer would consider as a reason in picking a more expensive baby food product.  By negligently and/or deceptively representing, marketing, and advertising the Baby Foods as natural, and safe for babies' consumption, Defendant wrongfully capitalized on, and reaped enormous profits from, consumers' strong preference for premium natural baby food products.

84.     Additionally, Defendant knew or should have known that its ingredients, and the final products, could contain materials such as toxins, heavy metals, and perchlorate, and yet they did not test all ingredients and finished products, including the Baby Foods, for such materials.

85.     The Baby Foods are available at numerous retail and online outlets throughout the United States, including in Pennsylvania and Rhode Island.

86.     Third-party testing has made clear that the Baby Foods may in fact contain levels of both heavy metals and/or perchlorate.

87.     As a result of Defendant's omissions, a reasonable consumer would have no reason to suspect the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements in the Baby Foods without conducting his or her own scientific tests, or reviewing third-party scientific testing of these products.

88.     Defendant has wrongfully and misleadingly advertised and sold the Baby Foods without any label or warning indicating to consumers that these products may contain heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements, or that these toxins can accumulate over time in the baby's body to the point where poisoning, injury, and/or disease can occur.

## V.   DEFENDANT HAD KNOWLEDGE AND NOTICE OF ITS BREACHES OF ITS EXPRESS AND IMPLIED WARRANTIES.

89.     Defendant had sufficient notice of its breaches of express warranties.  Defendant has, and had, exclusive knowledge of the physical and chemical makeup of the Baby Foods. Defendant also had exclusive knowledge of its suppliers and whether any of them supplied ingredients at risk for containing perchlorate.

90.     Additionally, Defendant received notice of the contaminants in its baby food products, including the Baby Foods, through the Healthy Babies Bright Futures nonprofit organization, which found levels of heavy metals and perchlorate in its Baby Food products.

91.     Defendant previously released a response, posted on its website, to a study of lead contamination in baby food products by the Environmental Defense Fund.[42] In that response, Defendant stated that the report was based on data from "before Beech-Nut introduced a completely new line of products and revamped our sourcing standards.  In fact, all the Beech-Nut products listed in the report have either been reformulated or discontinued."

92.     That same response stated, "Our goal is to minimize the number of heavy metals in our products through testing and partnering with our suppliers to identify the areas of the country and specific farms with the lowest levels possible."  This response discusses the source of lead, cadmium, and arsenic, and what Defendant contends to be acceptable levels of those heavy metals in baby food products.

93.     In that same response, Defendant boasted, "[a]ll our products meet or exceed the FDA draft guidance for inorganic arsenic in rice cereals."

94.     Defendant did not change its packaging or labeling to include a disclaimer that the Baby Foods contained, or may contain, any levels of heavy metals.

**VI.     PRIVITY EXISTS WITH THE PLAINTIFFS AND THE PROPOSED CLASS.**

95.     Defendant knew that consumers such as Plaintiffs and the proposed Classes would be the end purchasers of the Baby Foods and the target of its advertising and statements.

96.     Defendant intended that the warranties, advertising, labeling, statements, and representations would be considered by the end purchasers of the Baby Foods, including Plaintiffs and the proposed Classes.

97.     Defendant directly marketed to Plaintiffs and the proposed Classes through statements on its website, labeling, advertising, and packaging.

---

[42] https://www.beechnut.com/beech-nut-edf-response/.

43

98.     Plaintiffs and the proposed Classes are the intended beneficiaries of the expressed

and implied warranties.

## CLASS-ACTION ALLEGATIONS

99.     Plaintiffs bring this action individually and on behalf of the following Classes

pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons in the United States who, from October 1, 2015, to the present, purchased the Baby Foods for household or business use, and not for resale (the "Class").

100.     Plaintiffs Henry and Jackson bring this action individually and on behalf of the

following Pennsylvania Sub-Class:

> All persons who are citizens of the Commonwealth of Pennsylvania who, from October 1, 2015, to the present, purchased the Baby Foods for household or business use, and not for resale (the "Pennsylvania Sub-Class").

101.     Plaintiff Dias and Buffinton bring this action individually and on behalf of the

following Rhode Island Sub-Class:

> All persons who are citizens of the State of Rhode Island who, from October 1, 2015, to the present, purchased the Baby Foods for household or business use, and not for resale (the "Rhode Island Sub-Class").

102.     Plaintiff Venable bring this action individually and on behalf of the following

Tennessee Sub-Class:

> All persons who are citizens of the State of Rhode Island who, from October 1, 2015, to the present, purchased the Baby Foods for household or business use, and not for resale (the "Tennessee Sub-Class").

103.     Excluded from the Class and Sub-Classes are the Defendant, any parent

companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees,

co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding

over this matter.

104.    This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.  Purchasers of the Baby Foods can identify their purchases through receipts, store rewards programs, and their own testimony.

105.    The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Class members in a single action will provide substantial benefits to the parties and Court.

106.    Questions of law and fact common to Plaintiffs and the Classes include, but are not limited to, the following:

a.  whether Defendant owed a duty of care to Plaintiffs and the Classes;

b.  whether Defendant knew or should have known that the Baby Foods contained, or may contain, heavy metals;

c.  whether Defendant knew or should have known that the Baby Foods contained, or may contain, perchlorate;

d.  whether Defendant wrongfully represented and continues to represent that the Baby Foods are natural and safe for human infant consumption;

e.  whether Defendant wrongfully represented and continues to represent that the Baby Foods are healthy, superior quality, nutritious and safe for consumption;

f.  whether Defendant wrongfully represented and continues to represent that the Baby Foods are natural;

g.  whether Defendant wrongfully represented and continues to represent that the Baby Foods appropriate for consumption by various "Stage[s]" of babies;

h.  whether Defendant wrongfully represented and continues to represent that the manufacturing of the Baby Foods are subjected to rigorous standards, including testing for heavy metals;

i.  whether Defendant wrongfully failed to disclose that the Baby Foods contained, or may contain, heavy metals and/or perchlorate;

j.  whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

45

k.   whether those representations are likely to deceive a reasonable consumer;

l.   whether a reasonable consumer would consider the presence, or risk of, heavy metals and/or perchlorate as a material fact in purchasing baby food;

m.   whether Defendant had knowledge that those representations were false, deceptive, and misleading;

n.   whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

o.   whether a representation that a product is healthy, superior quality, nutritious and safe for consumption and does not contain arsenic, mercury, cadmium, lead and/or perchlorate is material to a reasonable consumer;

p.   whether Defendant's representations and descriptions on the labeling of the Baby Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

q.   whether Defendant violated the laws of the Commonwealth of Pennsylvania;

r.   whether Defendant violated the laws of the State of Rhode Island;

s.   whether Defendant breached its express warranties;

t.   whether Defendant breached its implied warranties;

u.   whether Defendant engaged in unfair trade practices;

v.   whether Defendant engaged in false advertising;

w.   whether Defendant's conduct was negligent per se;

x.   whether Defendant made negligent and/or fraudulent misrepresentations and/or omissions;

y.   whether Plaintiffs and the members of the Class are entitled to actual, statutory, and punitive damages; and

z.   whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief.

107.   Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Classes.  Identical statutory violations and business practices and harms are involved.  Individual

questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

108.     Plaintiffs' claims are typical of those of the members of the Classes in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

109.     Plaintiffs will fairly and adequately represent and protect the interests of the Classes, have no interests incompatible with the interests of the Classes, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

110.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small such that, absent representative litigation, it would be infeasible for members of the Classes to redress the wrongs done to them.

111.     Questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Class.

112.     As a result of the foregoing, class treatment is appropriate.

## **CLAIMS FOR RELIEF**

### **COUNT I**
**Breach of Express Warranty Against Defendant on Behalf of the Class (or, alternatively, the State Subclasses)**

113.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

114.     Defendant marketed and sold the Baby Foods into the stream of commerce with the intent that the Baby Foods would be purchased by Plaintiffs and the Class.

115.     Defendant expressly warranted, advertised, and represented to Plaintiffs and the Class that its Baby Foods are:

a.   Natural;

b.   Appropriate for certain "Stage[s]" of babies; and

c.   "real food for babies"

116.    Defendant made these express warranties regarding the Baby Foods' quality, ingredients, and fitness for consumption in writing through its website, advertisements, and marketing materials and on the Baby Foods' packaging and labels.  These express warranties became part of the basis of the bargain that Plaintiffs and the Class entered into upon purchasing the Baby Foods.

117.    Defendant's advertisements, warranties, and representations were made in connection with the sale of the Baby Foods to Plaintiffs and the Class.  Plaintiffs and the Class relied on Defendant's advertisements, warranties, and representations regarding the Baby Foods in deciding whether to purchase Defendant's products.

118.    Defendant's Baby Foods do not conform to Defendant's advertisements, warranties and representations in that they:

a.   Are not natural or suitable for consumption by human infants; and

b.   Contain, or may contain, levels of various heavy metals and/or perchlorate;

119.    Defendant was on notice of this breach as they were aware of the included heavy metals and/or perchlorate in the Baby Foods and based on the public investigation by the Healthy Babies Bright Futures report that showed its baby food products as unhealthy.

120.    Privity exists because Defendant expressly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that the Baby Foods were healthy, natural, and suitable for consumption and by failing to make any mention of heavy metals, perchlorate, and/or unnatural or other ingredients.

121.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and they would not have purchased at all had they known of the risk and/or presence of heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

122.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

## COUNT II
### Breach of Implied Warranty of Merchantability Against Defendant on Behalf of the Class (or, alternatively, the State Subclasses)

123.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

124.     Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Class.

125.     There was a sale of goods from Defendant to Plaintiffs and the Class.

126.     At all times mentioned herein, Defendant manufactured or supplied the Baby Foods, and prior to the time the Baby Foods were purchased by Plaintiffs and the Class, Defendant impliedly warranted to them that the Baby Foods were of merchantable quality, fit for their ordinary use (consumption by babies), and conformed to the promises and affirmations of fact made on the Baby Foods' containers and labels, including that the food was natural and safe and appropriate for human infant consumption.  Plaintiffs and the Class relied on Defendant's promises and affirmations of fact when they purchased the Baby Foods.

127.     The Baby Foods were not fit for their ordinary use, consumption by babies, and did not conform to Defendant's affirmations of fact and promises as they contained, or were at

risk of containing, heavy metals, perchlorate, and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

128.    The Baby Foods did not conform to Defendant's affirmations of fact that they were natural because they contained the chemical perchlorate.

129.    Defendant breached its implied warranties by selling Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals, perchlorate, and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

130.    Defendant was on notice of this breach, as it was aware of the heavy metals and/or perchlorate included, or at risk, in the Baby Foods, and based on the public investigation by Healthy Babies Bright Futures that showed Defendant's baby food products as unhealthy and contaminated.

131.    Privity exists because Defendant impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that the Baby Foods were natural, and suitable for consumption by babies, and by failing to make any mention of heavy metals, perchlorate, and/or unnatural or other ingredients.

132.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals, perchlorate, and/or unnatural or other ingredients.

133.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

**COUNT III**
**Fraudulent Misrepresentation Against Defendant on Behalf of the Class (or, alternatively, the State Subclasses)**

134.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

135.    Defendant falsely represented to Plaintiffs and the Class that their Baby Foods are:

     (a)  Natural;

     (b)  Appropriate for certain "Stage[s]" of babies; and

     (c)  "real food for babies."

136.    Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class to purchase its Baby Foods.

137.    Defendant knew that their representations about the Baby Foods were false in that the Baby Foods contained, or were at risk of containing, levels of heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.  Defendant allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class.

138.    Plaintiffs and the Class did in fact rely on these misrepresentations and purchased the Baby Foods to their detriment.  Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted the Baby Foods, Plaintiffs' and the Class's reliance on Defendant's misrepresentations was justifiable.

139.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or

presence of heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

140.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT IV**
**Fraud by Omission Against Defendant on Behalf of the Class (or, alternatively, the State Subclasses)**

141.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

142.     Defendant concealed from and failed to disclose to Plaintiffs and the Class that their Baby Foods contained, or were at risk of containing, heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

143.     Defendant was under a duty to disclose to Plaintiffs and the Class the true quality, characteristics, ingredients and suitability of the Baby Foods because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Baby Foods for consumption by babies; and (3) Defendant knew that Plaintiffs and the Class could not reasonably have been expected to learn or discover that the Baby Foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Baby Foods.

144.     The facts concealed or not disclosed by Defendant to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Baby Foods.

145.    Plaintiffs and the Class justifiably relied on the Defendant's omissions to their detriment.  The detriment is evident from the true quality, characteristics, and ingredients of the Baby Foods, which is inferior when compared to how the Baby Foods are advertised and represented by Defendant.

146.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

147.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT V**
**Negligent Misrepresentation Against Defendant on Behalf of the Class (or, alternatively, the State Subclasses)**

148.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

149.    Defendant had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacture, marketing, distribution, and sale of the Baby Foods.

150.    Defendant breached its duty to Plaintiffs and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendant and by failing to promptly remove the Baby Foods from the marketplace or to take other appropriate remedial action.

151.     Defendant knew or should have known that the ingredients, qualities, and characteristics of the Baby Foods were not as advertised or suitable for their intended use, consumption by infants, and were otherwise not as warranted and represented by Defendant. Specifically, Defendant knew or should have known that: (1) certain Baby Foods were not natural because they contained, or were at risk of containing, levels of perchlorate; (2) the Baby Foods were not nutritious, superior quality, pure, natural, healthy and safe for consumption because they contained, or had a risk of containing, levels of heavy metals, perchlorate, and/or other unnatural ingredients or contaminants that do not conform to the packaging; (3) the Baby Foods were adulterated, or at risk of being adulterated, by heavy metals and perchlorate; and (4) the Baby Foods were otherwise not as warranted and represented by Defendant.

152.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known they contained, or were at risk of containing, heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

153.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

**COUNT VI**
**Unjust Enrichment Against Defendant on Behalf of the Class (or, alternatively, the State Subclasses)**

154.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

155.     Substantial benefits have been conferred on Defendant by Plaintiffs and the Class through the purchase of the Baby Foods.  Defendant knowingly and willingly accepted and enjoyed these benefits.

156.     Defendant either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendant.  As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

157.     Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs and the Class.

158.     Plaintiffs and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

159.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT VII**
**Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law,**
**73 Pa. Cons. Stat. Ann. §§201-1 et seq. (the "UTPCPL") on Behalf of Plaintiffs Henry and**
**Jackson and the Pennsylvania Sub-Class**

160.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

161.     Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. §§201-1 et seq. (the "UTPCPL") makes unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

162.     Defendant is a manufacturer, marketer, seller, and distributor of the Baby Foods.

163.    Defendant markets and sells the Baby Foods with express warranties created on the Products' packaging, labeling, advertisements, marketing literature, and website regarding the qualities, ingredients, and benefits of the Baby Foods.

164.    Plaintiffs Henry and Jackson and the Pennsylvania Sub-Class purchased the Baby Foods for personal, household, or family use.

165.    Defendant misrepresented the quality of the Baby Foods and the ingredients contained therein on its labels in violation of the UTPCPL.

166.    Defendant's deceptive, false and misleading statements deceived Plaintiffs Henry and Jackson and Pennsylvania Sub-Class members and deceived a substantial segment of the target consumer audience in violation of the UTPCPL.

167.    The conduct described above and throughout this Complaint took place within the Commonwealth of Pennsylvania and constitutes unfair methods of competition or unfair or deceptive acts or practices pursuant to §§201-2(4)(v), (vii), and (xxi) of the UTPCPL.

168.    In violation of the UTPCPL, Defendant omitted and concealed material facts from Plaintiffs Henry and Jackson and other Pennsylvania Sub-Class members regarding the quality, characteristics, and benefits of the Baby Foods.

169.    The omissions and misrepresentations described herein were likely to deceive consumers into purchasing the Baby Foods.

170.    Defendant knew or reasonably should have known that its representations about the Baby Foods were false, that the Baby Foods contained, or were at risk of containing, heavy metals, chemicals or toxins, and otherwise were not as warranted and represented by Defendants.

171.    Defendant knew or should have known, at the time the Baby Foods left its control that they contained heavy metals, chemicals or toxins, and were not made of ingredients fit for consumption by babies.

172.    Defendant's deception is material as it influenced purchasing and payment decisions.

173.    Plaintiffs Henry and Jackson and Pennsylvania Sub-Class members have been damaged as a direct and proximate result of defendant's deceptive and unfair practices.

174.    Defendant intended that Plaintiffs Henry and Jackson and other Pennsylvania Sub-Class members rely on its representations, as their reliance was crucial to Defendant being able to command a premium for the Baby Foods.

175.    Defendant deceived and continues to deceive consumers about the quality and ingredients of its Baby Foods as well as the fitness of these products for ingestion by babies. This conduct constitutes unfair or deceptive acts or practices within the meaning of the UTPCPL. This illegal conduct by Defendant is continuing, with no indication that it will cease.

176.    Defendant's actions in connection with the manufacture and distribution of the Baby Foods as set forth herein, evidence a lack of good faith, honesty in fact, and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the UTPCPL.

177.    Defendant acted willfully, knowingly, intentionally, unconscionably, and with reckless indifference when it committed these acts of consumer fraud.

178.    Defendant intended that Plaintiffs Henry and Jackson and the other Pennsylvania Sub-Class members rely on the acts of concealment, omissions and misrepresentations regarding

the nature of the Baby Foods so that Plaintiffs Henry and Jackson and the other Pennsylvania Sub-Class members would purchase the Baby Foods.

179.    Plaintiffs Henry and Jackson and the other Pennsylvania Sub-Class members relied on the acts of concealment, omissions, and misrepresentations regarding the nature of the Baby Foods.

180.    Plaintiffs Henry and Jackson and the other Pennsylvania Sub-Class members, had Defendant disclosed to them all material information regarding the Baby Foods, would have considered the omitted information material to their decision to purchase the Baby Foods at the price they paid.

181.    As a direct proximate result of Defendant's misrepresentations and omissions, Plaintiffs Henry and Jackson and the other members of the Pennsylvania Sub-Class suffered direct economic loss by purchasing the Baby Foods at a premium, and unwarranted, price.  Had Plaintiffs Henry and Jackson and other members of the Pennsylvania Sub-Class known the heavy metals, chemicals or toxins content of the Baby Foods, they would not have bought them, or they would not have paid the premium price that they did.

182.    Plaintiffs Henry and Jackson and Pennsylvania Sub-Class Members are entitled to recover compensatory damages, plus interest, attorneys' fees, and costs.

183.    Defendant's conduct was intentional, willful, wanton, malicious, and egregious, entitling Plaintiffs Henry and Jackson and members of the Pennsylvania Sub-Class to recover actual compensatory and statutory damages, as well as attorneys' fees and costs of suit, to the fullest extent.

## COUNT VIII
**Violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen.  Laws § 6 on Behalf of Plaintiffs Dias and Buffinton and the Rhode Island Sub-Class**

184.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

185.     Rhode Island Deceptive Trade Practices Act § 6-13 *et seq*. prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

186.     In its sale of goods throughout Rhode Island, Defendant conducts business and trade within the meaning and intendment of Rhode Island Deceptive Trade Act § 6-13.1-1.

187.     Plaintiffs Dias and Buffinton are members of the Rhode Island Sub-Class are consumers who purchased products from Defendant.

188.     Defendant violated Rhode Island Deceptive Trade Act § 6-13.1-1(6) by representing that its Baby Foods were:

(a)      Natural;
(b)      Appropriate for certain "Stage[s]" of babies;
(c)      "real food for babies."

189.     This was deceptive because the Baby Foods contained, and/or had a material risk of containing, heavy metals, perchlorate, and/or unnatural or other ingredients.

190.     Defendant intentionally represented that the Baby Foods were of a particular standard, grade, or quality when they were in fact adulterated and not fit for consumption by babies.

191.     The facts that Defendant concealed or misrepresented were material in that Plaintiffs Dias and Buffinton and any reasonable consumer would have considered them when deciding whether to purchase the Baby Foods.

192.    Defendant's conduct and omissions described herein repeatedly occurred in the course of Defendant's business and were capable of deceiving a substantial portion of the consuming public.

193.    Defendant has engaged and continues to engage in deceptive conduct in violation of the Rhode Island Deceptive Trade Practices Act.

194.    Defendant's misrepresentations and deceptive acts or practices resulted in Plaintiffs Dias and Buffinton and the Rhode Island Sub-Class suffering actual damages when they purchased Baby Foods that were worth less than the price paid and that they would not have purchased at all had they known of the presence, or risk of, heavy metals, perchlorate, and/or any other ingredients or contaminants that do not conform to the packaging.

195.    Defendant intended for Plaintiffs Dias and Buffinton and the members of the Rhode Island Sub-Class to rely on its deceptive misrepresentations and conduct when purchasing its Baby Foods.

196.    As a direct and proximate result of these violations, Plaintiffs Dias and Buffinton and the Rhode Island Sub-Class have been harmed, and that harm will continue unless Defendant is enjoined from misrepresenting the quality and ingredients of its Baby Foods described herein.

197.    Pursuant to R.I. Gen. Law Title 6, Plaintiffs Dias and Buffinton and the Rhode Island Sub-Class seek injunctive and declaratory relief, full refund, actual and punitive damages, and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, prays for judgment against the Defendant as to each and every count, including:

A.      An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B.      An order enjoining Defendant from selling the Baby Foods until the levels of heavy metals and/or perchlorate are removed or full disclosure of the presence of such appears on all labels, packaging, and advertising;

C.      An order enjoining Defendant from selling the Baby Foods in any manner suggesting or implying that they are healthy, natural, and safe for consumption;

D.      An order requiring Defendant to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

E.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F.      An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.      An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

I.      An order requiring Defendant to pay punitive damages on any count so allowable;

J.      An order awarding attorney's fees and costs, including the costs of pre-suit investigation, to Plaintiffs and the Class; and

K.      An order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated:  March 11, 2021                          s/      *Miles Greaves*
                                                Miles Greaves
                                                Kevin Landau
                                                **TAUS, CEBULASH & LANDAU,
                                                LLP**
                                                80 Maiden Lane, Suite 1204
                                                New York, NY 10038
                                                (212) 931-0704
                                                mgreaves@tcllaw.com
                                                klandau@tcllaw.com

                                                Daniel E. Gustafson
                                                Amanda M. Williams
                                                Raina C. Borrelli
                                                Mary M. Nikolai
                                                **GUSTAFSON GLUEK PLLC**
                                                Canadian Pacific Plaza
                                                120 South Sixth Street, Suite 2600
                                                Minneapolis, MN 55402
                                                Tel: (612) 333-8844
                                                dgustafson@gustafsongluek.com
                                                awilliams@gustafsongluek.com
                                                rborrelli@gustafsongluek.com
                                                mnikolai@gustafsongluek.com

                                                Marc H. Edelson*
                                                **EDELSON LECHTZIN LLP**
                                                3 Terry Drive, Suite 205
                                                Newtown, PA 18940
                                                Tel: 215-867-2399 (work)
                                                Medelson@edelson-law.com

                                                Joshua H. Grabar*
                                                **GRABAR LAW OFFICE**
                                                One Liberty Place
                                                1650 Market Street, Suite 3600

Philadelphia, PA 19103
Tel: (267) 507-6085
Fax: (267) 507-6048
Jgrabar@grabarlaw.com

Kenneth A. Wexler
Kara A. Elgersma
**WEXLER WALLACE, LLP**
55 West Monroe, Suite 3300
Chicago, Illinois 60603
Tel: (312) 346-2222
kaw@wexlerwallace.com
kae@wexlerwallace.com

Simon B. Paris
Patrick Howard
**SALTZ, MONGELUZZI, &
BENDESKY, P.C.**
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
P: 215-575-3895
sparis@smbb.com
phoward@smbb.com

***Attorneys for Plaintiffs***